# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
April 21, 2010 Session

## WILLIAM EARL ROBINSON A.K.A. EDWARD BAXTER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2005-C-1976    Cheryl Blackburn, Judge**

---

**No. M2009-01170-CCA-R3-PC - Filed August 9, 2010**

---

The petitioner, William Earl Robinson, a.k.a. Edward Baxter, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief. The petitioner pled guilty to rape, a Class B felony, and was sentenced to eight years, which was suspended to probation upon acceptance of the plea. After his probationary sentence was revoked, the petitioner filed a post-conviction petition, alleging that his plea was entered unknowingly and involuntarily based upon the ineffective assistance of counsel. On appeal, he specifically contends that trial counsel was ineffective by failing to properly advise the petitioner of his potential range of punishment for the charged offenses prior to his acceptance of the plea. Following review of the record, we find no error and affirm the denial of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID H. WELLES and THOMAS T. WOODALL, JJ., joined.

Jeremy W. Parham, Nashville, Tennessee, for the appellant, William Earl Robinson a.k.a. Edward Baxter.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The underlying facts of the case, as recited by the State at the guilty plea hearing, are as follows:

[The petitioner] came over to Ms. Janice Russell's home at 2715 White's Creek Pike. That was in the afternoon/early evening hours of April 21, 2005, here in Davidson County. Ms. Russell and Mr. Campbell had [ ] a previous sexual relationship that had been some years prior.

Ms. Russell had some guests at the time, a Ms. Campbell and Mr. Cooper, and they were all there together for a period of time. Ms. Campbell and Mr. Cooper will testify that there was no obvious physical or verbal involvement between the two of them while they were there and that eventually they left after getting into some dispute with [the petitioner] about who should leave.

Ms. Russell would say that [the petitioner] stayed around for a while longer. Ultimately she tried to get him to leave, and he [would not]. She went to the bathroom at one point. When she came out of the bathroom, [the petitioner] met her in the hallway, pushed her into the bedroom, forced her down, forced her clothes off, and raped her. He let her up, she got dressed, and was able to call 911 and hang up. They called her back, and she pretended it was someone that she knew. But she told them enough to understand that she needed some assistance, so the police came out there.

[The petitioner] was caught not too far away, and Ms. Russell was taken for medical legal examination where some swabs were recovered that showed that they did have intercourse.

Ms. Russell would say that at one point [the petitioner] had a cigarette, which he had or almost threatened her with and smashed out on the remote control in the room where this occurred. And that did come back to his DNA on the cigarette. In the interview with Detective McClain, while denying that the intercourse - [the petitioner] said the intercourse was consensual. He was very adamant that there would be no evidence to show that he had smashed out that cigarette on the remote control or that [the] cigarette was his or he had any contact with it. And the proof would obviously show otherwise at trial.

Based upon the foregoing actions, the petitioner was indicted by a Davidson County grand jury for one count of rape and one count of robbery. The petitioner was originally represented by counsel from the Public Defender's Office, but trial counsel was appointed to represent him after conflicts as to the handling of the petitioner's case arose. The petitioner also subsequently requested that trial counsel be relieved as he was unhappy with trial counsel's handling of the case. After a hearing was held, the motion to relieve trial counsel was denied.

On the morning the case was scheduled to be tried, the petitioner entered a guilty plea to one count of rape. The agreement provided that the robbery charge would be dismissed and that the petitioner would receive a sentence of eight years for the rape conviction, the balance of which was

to be suspended to supervised probation. Prior to acceptance of the plea, the trial court, in response to questioning by the petitioner, provided a lengthy explanation of the probationary requirements, including the general requirements of the sex offender program. Additionally, the trial court reviewed the possible sentence ranges for the charged crimes of rape and robbery. The court continued with the required litany of rights, including asking the petitioner if he was satisfied with trial counsel's performance. The petitioner initially responded that he was not and stated that he was accepting the plea only because he was reluctant to go to trial with trial counsel because he believed that trial counsel was unprepared. He specifically claimed he was upset because trial counsel had informed him that he did not believe he could win the case. The court then informed the petitioner that it would not accept the plea if that was the petitioner's only motivation to enter the plea. The court also questioned trial counsel regarding his preparedness, and counsel responded that he was prepared to try the case. After this discussion, the petitioner stated that he wanted to enter the plea and that he was aware that it was solely his decision, regardless of the advice of trial counsel. Following the recitation of the facts by the State, the petitioner stated on the record that he did not agree, specifically he continued to assert that the sexual intercourse was consensual. The court again informed the petitioner that it would not accept the plea under those circumstances, and the State responded that it would not accept a best-interest plea agreement. Thereafter, the petitioner stated that he was, in fact, guilty of rape and agreed with the State's recitation of the facts.

Less than one month later, a probation violation warrant was issued, charging the petitioner with failure to comply with the terms and conditions of probation. After a hearing on the matter, the trial court found that the petitioner was not in compliance with the agreement and revoked the petitioner's probation, ordering him to serve the balance of his sentence. The petitioner appealed the revocation, and a panel of this court upheld the decision. *State v. William Earl Robinson*, No. M2007-00233-CCA-R3-CD (Tenn. Crim. App. at Nashville, Nov. 15, 2007).

The petitioner then filed a *pro se* petition for post-conviction relief, alleging, among other grounds, that his plea was entered unknowingly and involuntarily because trial counsel was ineffective. Counsel was appointed, and an amended petition was filed in the court. Later, a hearing was held, and testimony was heard from the petitioner, trial counsel, and an investigator. The petitioner testified that he was very displeased with trial counsel's performance because trial counsel had committed numerous errors. He stated that trial counsel had failed to develop a defense based upon the petitioner's allegation that the victim had sex with him in exchange for drugs. He also complained that trial counsel would not discuss "impeachment of the victim" with him, despite the fact of the discovery materials' continued documentation that the victim had an alcohol level of 8.3, as well as cocaine and marijuana levels in her system at the time of the incident. According to the petitioner, trial counsel informed him that this evidence could not be used. The petitioner acknowledged that he had met with trial counsel and his investigator on multiple occasions, but he claimed nothing was accomplished because the two always disagreed. He further testified that he only pled guilty because he felt that trial counsel was unprepared to go to trial. Finally, he testified that trial counsel, as well as the trial court, inaccurately advised him that he would be facing a sentence of thirty years if he went to trial. He later acknowledged on cross-examination that the transcript of the plea hearing reflected that the court had accurately stated his possible sentences, but

he claimed that he did not understand or hear those statements because he was "in fear."

Patrick Wells testified that he worked with trial counsel in investigating the petitioner's case. He testified that he interviewed several witnesses who stated that the victim had a propensity to lie. He went on to note that all the results of his investigation were shared with the petitioner but that the petitioner was often uncooperative in helping him locate witnesses to testify at trial. Mr. Wells also testified regarding his recollection of when he personally delivered a letter to the petitioner from trial counsel which detailed the potential range of punishments the petitioner faced if he went to trial. Mr. Wells recalled that the petitioner wadded up the letter and threw it to the ground. According to Mr. Wells, trial counsel had previously attempted to mail the letter, but he personally delivered it because the petitioner claimed it was not received.

Trial counsel testified that he represented the petitioner in this case and stated that he reviewed possible defenses, the charged offenses, possible sentencing ranges, and discovery with the petitioner during the pretrial period. He stated that he informed the petitioner that, based upon the facts, the only defense available was that the sex with the victim had been consensual. He further testified that he subpoenaed witnesses who had been discovered in the investigation, which indicated that the victim had a reputation for untruthfulness. He also stated that he believed he would be able to cross-examine the victim regarding her intoxication levels when the State introduced the medical reports into evidence to establish the offense. With regard to possible sentence ranges, trial counsel related that he had a copy of a letter, which was delivered to the petitioner, indicating the correct possible sentences if the petitioner proceeded to trial. He testified that he advised the petitioner to accept the plea agreement, but he also stated that, prior to the morning the case was set for trial, the petitioner had expressed no interest in doing so. At the hearing, trial counsel stated that, based upon the facts of the case, he was as prepared for trial as he could possibly be.

After hearing the evidence presented, the post-conviction court, by written order, denied relief to the petitioner. This timely appeal followed.

**Analysis**

On appeal, the petitioner contends that his guilty plea was not entered knowingly and voluntarily, based upon the ineffective assistance of counsel. In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the [petitioner]." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were "voluntary" and "intelligent" must look to various circumstantial factors, such as the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was

represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the petitioner must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997). The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceeding. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel, however, is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Id*. at 458.

## I. Ineffective Assistance of Counsel

On appeal, the petitioner contends that trial counsel was ineffective due to his failure to properly advise the petitioner of potential ranges of punishment for the charged offenses before allowing the petitioner to plead guilty. In support of his argument, he relies upon the statement that trial counsel allegedly told him that "it was in his best interests to take the offered [eight-year] deal because he 'would be looking at thirty years' if he went to trial." He contends that trial counsel's statement of thirty years was wrong, as he was only facing a possible range of punishment of eight to twelve years for the rape and six to ten years for the robbery. The petitioner also complains that

in the letter written to the petitioner detailing the possible punishments ranges correctly, trial counsel allowed his investigator to deliver the letter despite the fact that he was not qualified to explain sentencing guidelines.

With regard to trial counsel's advice to the petitioner as to sentencing ranges, the post-conviction court, in its order denying relief, made the following statements:

> The Court also advised the Petitioner of the range for the offenses and specifically noted where [in] the range [the] Petitioner fell due to his prior convictions. The Court's explanation of the range mirrors the information trial counsel provided in his letter to [the] Petitioner, which was admitted as Exhibit 6. Contrary to [the] Petitioner's assertion in his *pro se* amended petition, both trial counsel and the Court accurately advised him of his potential exposure.

After review, we must conclude that nothing in the record contradicts the post-conviction court's findings. Indeed, the only proof to the contrary is offered by the petitioner when he alleged that trial counsel informed him that he would be facing a possible thirty-year exposure if he proceeded to trial. Trial counsel did not recall making the statement and, further, testified that he accurately advised the petitioner. Additionally, the post-conviction court specifically stated on the record that it did not accredit the testimony of the petitioner. This court has stated on numerous occasions that it is not the province of an appellate court to review credibility determinations made by the lower court. Moreover, the proof which was presented in the record, namely the letter written by trial counsel and the transcript of the guilty plea hearing, indicates that the petitioner was accurately advised by both trial counsel and the trial court. Finally, the petitioner's complaint with regard to trial counsel's choice to have the investigator personally deliver the letter, does not further his argument. It was stated on the record that trial counsel visited with the petitioner numerous times prior to the acceptance of the agreement and the petitioner could have, at any one of those meetings, asked for clarification on the subject. As such, the petitioner has simply failed to carry his burden of establishing by clear and convincing evidence that trial counsel was deficient.

## II. Knowing and Voluntary Guilty Plea

The petitioner also asserts that his plea was not entered knowingly and voluntarily in this case. In support of this argument, he relies upon the fact that he did not plead guilty until the morning of trial and only did so at that point because he was afraid that trial counsel was not prepared for trial. He says that, prior to entering the plea, he made clear that he was "reluctant" to go to trial with trial counsel. He also relies upon the fact that he continued to protest his innocence in open court and only agreed to the facts, as stated, under "duress" because the State was going to withdraw the plea offer. He contends that the record in this case demonstrates that the plea was "the result of fear and coercion." Review of the record does not support these assertions.

In finding that the plea was entered knowingly and voluntarily, the post-conviction court made the following extensive findings:

In making this determination, the court concludes that [the] Petitioner's testimony is not credible as it is belied by his own statements to law enforcement made on the date of the incident, the testimony from the hearing on trial counsel's motion to withdraw, and [the] Petitioner's statements during his plea colloquy. Further, [the] Petitioner's testimony is discredited by his lengthy prior criminal history. . . .

The Court notes that during [the] Petitioner's guilty plea hearing, [the] Petitioner was not hesitant to ask the Court when he had questions about the plea conditions. The Court spent a lengthy amount of time advising [the] Petitioner. . . .

During the plea colloquy, [the] Petitioner asked the Court several questions, including whether he could obtain his property that was held at the police department and whether pleading guilty to the offense would impact his future employability. Thus, it is clear from the transcript that this was not a plea where the [petitioner] simply answered "yes" to all questions asked. Rather, [the] Petitioner actively engaged in his hearing by asking questions throughout the process.

[The] Petitioner informed the Court that his counsel's advice "steered" him to accept the plea but agreed that it was his own decision to plead guilty.

. . . .

The Court continued with the colloquy and [the] Petitioner acknowledged that [trial counsel] was prepared to go to trial, but expressed to the Court that he was "totally reluctant" to go to trial with [trial counsel]. At that point, the Court informed [the] Petitioner that if he was pleading just because he did not feel his trial counsel was prepared for trial, the Court would not accept the plea. The Court then began to question [trial counsel] as to his trial preparedness, when [the] Petitioner interrupted indicating he wanted to enter a plea.

. . . .

The guilty plea hearing continued with the State providing a recitation of the proof in the case as well as the inconsistencies between [the] Petitioner's statements to the police and the evidence that would be provided at trial. At the conclusion of the State's recitation, [the] Petitioner declared the sex was consensual. The State interjected that it would not accept a best interest plea and the Court explained that best interest plea would prohibit [the] Petitioner from [completing] his sex offender treatment, which would violate his probation. The Court thus asked [the] Petitioner if he was "pleading guilty because you're guilty?" [The] Petitioner indicated he was pleading guilty because he had committed the crime. The Court then sentenced [the]

Petitioner.

After conducting a *de novo* review accompanied by the presumption of correctness, we must conclude that the record more than supports the post-conviction court's findings. A reading of the guilty plea transcript reveals that the petitioner, after personally engaging in a conversation with the court, stated that he understood all the rights to which he was entitled and that he agreed to waive those rights. He stated on the record that: he fully understood his plea; he had discussed it with trial counsel; he was not under the influence of medication; and he was literate. This rather rare active interaction by the petitioner does belie his contention that he was in fear and could not comprehend the statements made to him by the court.

Moreover, the facts relied upon by the petitioner, namely that he was pleading only because trial counsel was not prepared and that he initially disagreed with the State's recitation of the facts, were considered thoroughly by the post-conviction court. While the petitioner did make those statements, the trial court, prior to accepting the plea, admonished him very clearly as to the consequences of his decision. After being so advised, the petitioner retracted his initial statements and asserted his intention to proceed with the plea. Although he had not previously expressed a desire to accept a plea in the case, the petitioner stood in court and stated that it was his wish to plead guilty to the crime and receive a sentence, which provided for his immediate release on probation.

A petitioner's plea of guilty constitutes an admission in open court that the petitioner committed the acts charged in the indictment. *Brady v. United States*, 397 U.S. at 748. The plea, however, is more than an admission; it is the petitioner's consent that judgment of conviction maybe entered without a trial. *Id*. A petitioner's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than lip service. Indeed, the petitioner's sworn statements and admissions of guilt stand as witness against the petitioner at the post-conviction hearing when the petitioner disavows those statements.

**CONCLUSION**

Based upon the foregoing, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-